IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LCrx, LLC (d/b/a Alpha Direct Compounding), | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| EXPRESS SCRIPTS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, LCrx, LLC (d/b/a Alpha Direct Compounding) ("Alpha Direct"), by and through its attorneys Roetzel and Andress, LPA and Herzog Crebs, LLP, complain of Express Scripts, Inc., ("ESI"), and in support thereof states as follows:

## PARTIES

1. At all relevant times, Plaintiff Alpha Direct is an Arizona limited liability company with its principal place of business at 8240 East Gelding (#115), Scottsdale, Arizona 85260. The Plaintiff's members are ACRx, LLC, an Arizona limited liability company, and Plaza Principles, LLC, also an Arizona limited liability company. The members of Plaintiff's members are Loren Howard and Chris Murphy, who are Arizona and Florida citizens respectively.

2. Upon information and belief, ESI is a Delaware corporation with its principal place of business in Missouri.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and the parties are citizens of different states.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this District.

## GENERAL FACTUAL ALLEGATIONS[1]

5.      Alpha Direct is a small, independent pharmacy located in Scottsdale, Arizona. Alpha Direct has served its community continuously since March 2013.  Alpha Direct specializes in providing "compounded" prescription medications to patients.  These are medications that consist of two or more ingredients that are combined, or "compounded," together on Alpha Direct's premises.

6.      Alpha Direct is associated with certain Pharmacy Benefit Managers ("PBMs"), including the Defendant in this action.  PBMs maintain networks of preferred pharmacies on behalf of health insurers, and reimburse pharmacies within the network for their services.

7.      Alpha Direct services thousands of prescriptions monthly for its patients, many of whom are within the Defendant's network.  As such, Alpha Direct submits claims for insurance reimbursement to the Defendant, who acts as an agent for insurance companies that are obligated for a substantial portion of the costs of the pharmaceutical medications provided by Alpha Direct to its patients within the Defendant's network.

8.      The Defendant maintains a provider agreement and a provider manual, either directly with pharmacies such as Alpha Direct, or by and through third party administrators known as Pharmacy Services Administrative Organizations or "PSAOs." The provider agreement and provider manual govern, among other things, the manner in which the

---

[1]      The factual allegations set forth herein are supported by the *Declaration of Loren Laprade Howard*, attached hereto as Exhibit 1.

relationship between the parties may be terminated and the procedures for termination and dispute resolution.

9.      On or about April 15, 2014, the Defendant submitted to Alpha Direct an "Express Scripts Provider Certification" form which set forth various questions to Alpha Direct about its pharmacy operations and practices.

10.      Question 29 of the Express Scripts Provider Certification asked: "Do you or your pharmacy(ies) ever waive or offer a reduction of member copayments?" Alpha Direct answered: "No. We do not waive copays and to the best of our knowledge work within all State and Federal guidelines for the collection of copays due."

11.      On May 5, 2014, Alpha Direct received a notice of termination from the Defendant. A true and correct copy of the notice is attached to the Declaration of Loren Howard as Exhibit A. In the notice, the Defendant asserted that the answer provided to Question 29 was a "misrepresentation" and that it has reason to believe that Alpha Direct has waived or discounted copayments.

12.      The Defendant's stated ground for attempting to terminate Alpha Direct is baseless. Alpha Direct has a stated policy and practice of collecting all co-payments, and it has a stated policy prohibiting any Alpha Direct employee from offering waivers or reductions in co-payments.

13.      The Defendant's termination also violates the dispute resolution procedure required under the provider agreement. Under the provider agreement, the parties are required to confer concerning any dispute arising under either the provider agreement or application of the terms of the provider manual. In that regard, the dispute resolution provision states:

> Except as provided here in, prior to either party taking any legal action in connection with this Agreement, both parties agree to meet in good faith to

resolve any claim or controversy ("Claim"), whether under federal or state statutory or common law, brought by either PBM or the Provider against the other . . . arising from or related in any way to the interpretation or performance of this agreement. The aggrieved party shall notify the other party of its Claim including sufficient detail to permit the other party to respond. The parties agree to meet and confer in good faith for a period of not less than thirty (30) days.

14. The Defendant provided Alpha Direct only eleven days' notice of termination and did not meet or confer with Alpha Direct for the required 30-day period. On May 15, 2014, after ongoing discussions with counsel for the Plaintiff concerning the Defendant's meet and confer obligations, the Defendant transmitted a letter reiterating that it intends to terminate the Plaintiff on May 16, 2014. (*See* Exhibit 2, ESI Letter dated May 15, 2014.)

15. In the event Alpha Direct is terminated on that date, it will suffer irreparable harm for which there is no adequate remedy at law. Specifically, the termination will prevent it from servicing nearly all patients within the Defendant's network and cause it to lose approximately 60% of its total revenue. A loss of this magnitude would result in the closing of Alpha Direct's operations and the layoff of a large number of its employees, which currently number approximately 120.

16. In addition, the exclusion of Alpha Direct from the Defendant's network would result in irreparable reputational harm and loss of customer goodwill. Once those customers are forced to turn to other mail-order pharmacies, Alpha Direct will permanently lose them to its competitors.

**COUNT I**

**DECLARATION OF ENFORCEABILITY OF
DISPUTE RESOLUTION PROVISION**

17. Alpha Direct restates and re-alleges paragraphs 1-16 of the Complaint as if fully set forth herein.

18.	28 U.S.C. § 2201(a) states:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

19.	There is an actual case and controversy between Alpha Direct and ESI concerning the application of the dispute resolution provision to ESI's contention that a misrepresentation entitles it to terminate Alpha Direct from its network.

WHEREFORE, Alpha Direct requests that the Court declare the parties' rights under the provider agreement, provider manual and any applicable documentation, including a declaration that ESI may not effect a termination of Alpha Direct from its network without first engaging in a 30-day meet-and-confer; and grant such other and further relief as this Court deems just.

## COUNT II

### BREACH OF CONTRACT AND INJUNCTIVE RELIEF

20.	Alpha Direct restates and re-alleges paragraphs 1-17 of the Complaint as if fully set forth herein.

21.	The provider agreement and provider manual form a binding and enforceable contract between Alpha Direct and the Defendant. In the alternative, those documents form a binding and enforceable contract between the Defendant and PSAOs, and Alpha Direct is a third-party beneficiary of that contract.

5

22.     The Defendant breached its contract by sending Alpha Direct a notice of termination without following the dispute resolution procedure in the agreement. The Defendant also breached its contract by purporting to terminate the contract on the false assumption that Alpha Direct has waived or discounted patient co-payments.

23.     Alpha Direct has been damaged by the Defendant's breach of contract.

WHEREFORE, Alpha Direct requests that the Court enjoin the Defendant from effecting a termination of Alpha Direct, or in the alternative, award Alpha Direct damages in an amount to be determined at trial but not less than $75,000, and grant such other and further relief as the Court deems just.

**COUNT III**

**DECLARATION OF EXPRESS SCRIPTS QUESTIONNAIRE, QUESTION #29**

24.     Alpha Direct restates and re-alleges paragraphs 1-23 of the Complaint as if fully set forth herein.

25.     There is an actual case and controversy between Alpha Direct and ESI concerning the interpretation of the Express Scripts Questionnaire, Question #29.

26.     ESI states in its May 15, 2014 termination letter the following: "Provider was terminated based on the fact that it provided inaccurate information in response to a credentialing request. Specifically, Provider stated that it never waives or offers a discount to member copayments."

27.     ESI Credentialing Questionnaire Question #29 asks: "Do you or your pharmacy(ies) ever waive or offer a reduction of member copayments? If yes, please provide a copy of your written policy relating to the waiver/reduction of copayments."

28.     Loren Howard, President of Alpha and Affiant, states that he truthfully answered question #29 on the Questionnaire.

29.     ESI has terminated Alpha based upon an inaccurate interpretation of its own questionnaire which clearly does not ask whether or not applicant "ever waives or offers a discount to member copayments."

30.     ESI relies upon PBM Provider Manual §4 "Immediate Termination. PBM shall have the right to immediately terminate this Agreement upon written notice to Network Provider in the event that…. (V) any representation to PBM or any response to a question set forth on the Provider Certification is untrue or becomes untrue."

WHEREFORE, Alpha Direct requests that the Court declare the parties' rights under the provider agreement, provider manual and any applicable documentation, including a declaration that ESI may not effect a termination of Alpha Direct from its network based upon allegations that Alpha Direct because they answered Question #29 "No". Further that ESI may not effect a termination of Alpha for the reasons stated in the May 15, 2014 notice of termination.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES TRIABLE TO JURY.

Respectfully submitted,

HERZOG CREBS LLP

By:     */s/ James D. Maschhoff*
        James D. Maschhoff     #41821MO
        100 North Broadway, 14th Floor
        St. Louis, Missouri  63102
        (314) 231-6700
        (314) 231-4656 – facsimile
        jdm@herogcrebs.com

        Christian M. Auty *(Pro Hac Vice Pending)*
        ROETZEL & ANDRESS, LPA
        20 South Clark Street, Suite 300
        Chicago, Illinois 60603
        (312) 580-1200

        Attorneys for Plaintiff, LCrx, LLC
        (d/b/a Alpha Direct Compounding)